```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LANDMARK VENTURES, INC.,                        :
                                                :
                Plaintiff,                      :
                                                :
        - against -                             :     11 Civ. 8440 (PAC)
                                                :
WAVE SYSTEMS CORP., SAFEND, INC., and           :     OPINION & ORDER
SAFEND LTD.,                                    :
                Defendants.                     :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 4, 2012

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiff Landmark Ventures, Inc. ("Landmark") seeks damages arising from an agreement to provide consulting services to Defendant Safend, Inc. ("Safend"). On October 20, 2011, Landmark filed its Complaint in Supreme Court, New York County, alleging breach of contract. Defendants Wave Systems and Safend (collectively "Defendants") removed this action by notice of removal, filed on November 18, 2011, asserting diversity jurisdiction under 28 U.S.C. § 1332(a). On January 4, 2012, the Court granted Landmark leave to amend its Complaint, and an Amended Complaint was filed on January 17, 2012. Defendants now move, under Fed.R.Civ.P. 12(b)(6), to dismiss the Amended Complaint for failure to state a claim. For the reasons discussed below, Defendants' motion is granted.

## **BACKGROUND**[1]

      Landmark provides strategic and financial consulting services to growth oriented technology companies, and is based in New York, New York. (Am. Compl. at 3 ¶ 8.) Safend markets endpoint data encryption products to customers worldwide and is located in Philadelphia, Pennsylvania. (Id. at 2 ¶¶ 3, 5.) Landmark alleges that Safend is "a wholly-owned

---

[1] The facts are taken from Landmark's Amended Complaint unless otherwise indicated. Because of the numerous paragraph numbering errors in Plaintiff's Amended Complaint, citations include both the paragraph number and page number on which the paragraph appears.

subsidiary, agent or corporate division" of Safend, Ltd., a foreign corporation based in Tel-Aviv Israel.  (Id. at 2 ¶ 4, 3 ¶ 5.)

Landmark alleges that on or about December 20, 2007, it entered into a consulting agreement (the "Agreement") with Safend.  (Id. at 3 ¶ 9.)  Under the terms of the Agreement, Landmark agreed to provide Safend with various "strategic and operational consulting services" to help Safend increase its sales.[2]  (Id.; Am. Compl., Ex. A ("Agreement") ¶ 1.)  In return for Landmark's services, Safend agreed to pay Landmark certain fees and commissions.  (Am. Compl. at 4 ¶ 11; Agreement ¶¶ 11-12, 15.)  Landmark also agreed to invoice its consulting fees and travel expenses to Safend on a monthly basis.  (Agreement ¶ 14.)  The Agreement required Safend to make payment within 15 days of the invoice date.  (Id.)

For Landmark's benefit, the Agreement also included an "anti-poaching" provision, which states in relevant part: "Client [Safend] furthermore agrees not to hire or offer any type of employment opportunities to Landmark Partners and Employees during the period of engagement plus an additional two (2) years, unless an express waiver is agreed upon in writing."  (Id. ¶ 4.)  The Agreement was executed by Gil Sever, President and CEO of Safend, whom Landmark alleges was also CEO and founder of Safend, Ltd.  (Id. at 7; Am. Compl. 3 ¶ 9.)

Landmark also alleges that from February 1, 2007 to June 2, 2011, it employed Louis Robert Gallucci ("Gallucci") as an executive in charge of sales, marketing, business development, and financing strategies.  (Am. Compl. at 4 ¶ 16.)  Since Gallucci had access to

---

[2] These services included:
> (i) identifying specific market segments and establishing a clear strategy for approaching targeted customers (ii) developing necessary value proposition and presentation materials for specific targets with vertical markets (iii) establishing contact and arrange meetings with target executives from agreed Target List (iv) preparing Client [Safend] for making presentations to and negotiating with target executives [and] (v) providing ongoing pre-sales, sales and post-sales account management services across the transaction cycle . . . .

(Agreement ¶ 1.)

Landmark trade secrets and other confidential company information, Landmark required Gallucci to enter into an employment agreement on February 1, 2007.  (Id. at 5 ¶¶ 20-21.)  Under his employment agreement, Gallucci agreed to devote his professional time and effort to Landmark's business and "refrain from professional practice" outside of Landmark's interests.  (Id. at 6 ¶ 21.)  Gallucci further agreed that during the term of his employment agreement, he would not directly or indirectly "engage in any other business, either as an employee, employer . . . or in any other capacity, either with or without compensation," without Landmark's prior written consent.  (Id. at 6 ¶ 22.)  The employment agreement also provided that "[w]hile employed with Landmark, and for one year after resignation or termination," Gallucci would not "solicit, accept employment or provide consulting services to any Landmark client . . . ."  (Id. at 6 ¶ 23.)  In addition, Gallucci entered into a Confidentiality and Intellectual Property Agreement with Landmark.[3]  (Id. at ¶ 25.)

On approximately June 2, 2011, Gallucci terminated his employment with Landmark.  (Id. at 5 ¶ 17.)  Landmark alleges that Safend "had meetings, conversations, and/or other communications with Gallucci regarding business matters," and that these communications were prohibited by the anti-poaching clause of the parties' Agreement as well as Gallucci's own agreements with Landmark.  (Id. at 5 ¶ 15.)  Landmark does not allege when these communications took place, or what specific matters were discussed.

In its first cause of action, Landmark alleges that it performed its obligations under the Agreement, but that "additional amounts are owed."  (Am. Compl. at 4 ¶¶ 11-12.)  According to the Amended Complaint, "[Safend] owe[s] Landmark certain sums of money," despite Landmark's demands for payment.  (Id. at 4 ¶ 13.)  Landmark does not specify any damages sought on this count.  In its second cause of action, Landmark alleges that Safend breached the

---

[3] The terms of Gallucci's confidentiality agreement with Landmark are not alleged in the Amended Complaint.

anti-poaching provision of the Agreement. Landmark alleges that Defendants advised Landmark "that Safend had worked with Gallucci, a former employee of Landmark, after the time that Mr. Gallucci's employment at Landmark had terminated." (Id. at 7 ¶ 16.) Landmark seeks damages of not less than $5,000,000 for its second cause of action.

## DISCUSSION

    A.  Standard of Review

In considering a Fed.R.Civ.P. 12(b)(6) motion to dismiss, a court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). A court need not accept as true, however, "[l]egal conclusions, deductions or opinions couched as factual allegations." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although a complaint need not contain detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

In determining the sufficiency of a complaint, the Court may consider "the factual allegations in [the] . . . complaint, . . . documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which the plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993).

B.  Breach of Contract

The parties selected New York law to govern their Agreement.[4] (Agreement ¶ 21.) To state a claim for breach of contract under New York law, a plaintiff must allege (1) the existence of an agreement; (2) adequate performance of the contract by plaintiff; (3) breach of the agreement by the defendant; and (4) damages. See Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). Under New York law, a contract "that is clear, complete, and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." Brad H. v. City of New York, 17 N.Y.3d 180, 185 (2011) (internal citations omitted). To determine whether language in an agreement is unambiguous, the Court must consider the contract "as a whole." Id. "The language of a contract is not made ambiguous simply because the parties urge different interpretations. Nor does ambiguity exist where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'" Seiden Associates, Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir.1992) (quoting Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 459 (1957)). The Court must avoid interpreting a contract in a manner that would be "absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties." In re Lipper Holdings, LLC, 766 N.Y.S.2d 561, 561 (1st Dep't 2003) (internal citations omitted).

The Court assumes the existence of a valid contract for purposes of Defendants' motion. Landmark has failed to plead any of the other elements required for alleging a valid breach of contract claim.

---

[4] As this Court has diversity jurisdiction, it must apply the law of the forum state, here New York. Under New York's choice-of-law rules, "in cases involving a contract with an express choice of law provision[,] [a]bsent fraud or violation of public policy, a court is to apply the law selected in a contract as long as the state selected has sufficient contacts with the transaction." Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000). Both parties transact business in the forum state, and there are no allegations of fraud in connection with the parties' Agreement. Accordingly, the Court applies New York contract law to the parties' Agreement.

In its first cause of action, Landmark alleges merely that "additional amounts are owed" under the Agreement, and that despite Landmark's demands for payment, Safend "owe[s] Landmark certain sums of money."  (Am. Compl. at 4 ¶¶ 11-13.)  Landmark fails to allege how much money Safend allegedly owes, for what services Landmark performed, or the dates on which the services were rendered.  Nor does Landmark allege that it provided Safend with invoices for any outstanding commissions or fees.  Without these essential facts, Landmark's conclusory allegations of damages do not state a plausible claim for relief.[5]  See Iqbal, 556 U.S. at 678; see also Lexington 360 Assocs. v. First Union Nat. Bank of North Carolina, 651 N.Y.S.2d 490, 492 (N.Y. App. Div. 1st Dep't 1996) ("In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint.") (citation omitted).

Landmark's second cause of action is also deficient, as Landmark fails to allege that any interaction between Gallucci and Safend breached the Agreement.  Under the anti-poaching provision, Safend agreed "not to hire or offer any type of employment opportunities to Landmark Partners and Employees during the period of engagement plus an additional two (2) years," absent written waiver by Landmark.  (Am. Compl. ¶ 4.)  Defendants argue that this language is

---

[5] To the extent that Landmark now argues in its opposition brief that Safend owes Landmark commissions relating to a transaction between Safend and UPS, Landmark failed to include these allegations either in its original state court complaint or in its Amended Complaint.  Its efforts to do so now fail as a matter of law.  See, e.g., Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) ("[A] plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss.").  Regardless of whether Landmark has a current contract for a commission, it has no legitimate demand for any sum.  The Agreement provides that "[f]or consideration in respect to generating a sale, Landmark will receive a fee equal to 7.5% of the net revenues *actually received* by [Safend] . . . ."  (Agreement ¶ 12) (emphasis added).  The receipt of revenues was therefore a condition precedent to Safend's obligation to pay Landmark its commission.  See Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 690 (1995) (defining condition precedent as "an act or event, other than a lapse of time, which, unless . . . excused, must occur before a party is obliged to perform a promise made pursuant to an existing contract.").  The email attached to Landmark's brief states that Safend had not yet received payment from UPS.  (Pl's Mem. in Opp., Appendix A.)  Landmark's Amended Complaint does not allege otherwise.  See Fed.R.Civ.P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.")  Thus, Landmark's commission was not yet due, and its claim for breach is premature.

unambiguous, and that it is intended to prevent Safend from hiring, or "poaching," Landmark's current employees. (Defs' Mem. at 7.) Landmark urges a broader reading of this clause. It argues that the parties intended this language to prevent Defendants from engaging the services of Landmark's partners and employees "in any business capacity, whether as an employee, consultant, independent contractor or otherwise." (Pl's Mem. in Opp. at 8.) Landmark also asserts that the clause prohibits Safend from hiring Landmark's former employees, "in any capacity, . . . for up to two years after the execution of the Agreement." (Id. at 9.)

Contrary to Landmark's argument, nothing in the plain language of the Agreement supports such a broad reading. On its face, the language is clear and unambiguous; it prohibits Safend from hiring or offering employment to "Landmark Partners and Employees" during the relevant period. The clause contains no reference or restriction as to former Landmark employees. Had the parties intended this restriction, they could have included such language. They did not, and the Court will not do so now "under the guise of interpreting the writing." See Reiss v. Fin. Performance Group, 97 N.Y.2d 195, 199 (2001); See also Chemical Bank v. Meltzer, 93 N.Y.2d 296, 303 (1999) (stating that a court "may not rewrite clear and unambiguous contracts").

Drawing all inferences in Landmark's favor, the Amended Complaint does not allege that Safend and Gallucci had any meetings or communications about "business matters" that breached the anti-poaching clause of the parties' Agreement. Landmark does not allege that Safend attempted to hire Gallucci or employ him in any capacity while he was employed by Landmark. Indeed, Landmark concedes that Safend "worked with Gallucci, a former employee of Landmark, *after* the time that Mr. Gallucci's employment at Landmark had terminated." (Am. Compl. at 7 ¶ 16) (emphasis added). Moreover, to the extent that Gallucci communicated with

7

Safend about "business matters" while he was employed with Landmark, Landmark fails to allege with any plausibility how those conversations, standing alone, violated the parties' Agreement. By definition, the consulting services Landmark allegedly provided to Safend required Landmark's employees to learn Safend's business in intricate detail. See note 2 supra. One assumes that Landmark's employees also discussed business matters with Safend during the course of Landmark's engagement. Accordingly, Landmark has not alleged a plausible claim that Safend breached the parties' Agreement.[6]

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Fed.R.Civ.P. 12(b)(6) motion to dismiss Landmark's Amended Complaint. As Landmark has failed to allege a breach of contract by Safend, Inc., the Court need not reach the parties' alter ego and veil piercing arguments with respect to Wave Systems Corp. and Safend Ltd. Regardless, Landmark's bald, conclusory allegations with respect to Wave Systems and Safend Ltd. do not provide a basis for piercing the corporate veil. See Robles v. Copstat Sec., Inc., No. 08 Civ. 9572, 2009 WL 4403188, at *2 (S.D.N.Y. Dec. 2, 2009) ("Mere conclusory statements that a corporation is dominated or controlled by [a parent owner] are insufficient to pierce the corporate veil . . . .") (citation omitted). As Landmark has already had an opportunity to amend its Complaint once, Landmark's Amended Complaint is dismissed with prejudice.

---

[6] To the extent that Landmark alleges Gallucci breached his employment agreement and confidentiality agreement with Landmark, Gallucci is not a defendant in this action, and Safend is not a party to those agreements.

The Clerk of Court is directed to enter judgment and terminate this case.

Dated: New York, New York
       September 4, 2012

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge